**William C. TURNER, et al., Plaintiffs,**

v.

**Verne ORR, Secretary of the Air Force, et al., Defendants-Appellees,**

**Jack Bess, Claimant-Appellant.**

**No. 86–3008**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 25, 1986.

Therefore, we do not consider it as worthy of any in-depth discussion.

**1224**

Major Jay L. Cohen, Headquarters U.S. Air Force, Washington, D.C., for defendants-appellees.

Before GODBOLD, VANCE and JOHNSON, Circuit Judges.

PER CURIAM:

On January 12, 1981, the district court approved a consent judgment in a class action suit brought by civilian employees at Eglin Air Force Base (Eglin) against the Air Force under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et

seq. The consent judgment settled the class members' claims of racial discrimination in hiring and promotion at Eglin. Pursuant to the consent decree, Jack Bess filed a complaint alleging that he was the victim of intentional racial discrimination in promotion. After a two day hearing, a special master found no discrimination in the filling of three electronics positions but found racial discrimination in the March 21, 1982 selection of another employee, Davis Gardner, for a GS–14 electronics position (Gardner position). The district court affirmed the special master's three findings of no discrimination. The district court, however, overruled the special master concerning the Gardner position on the grounds that Bess had failed to file a timely complaint about this position. Bess appeals the ruling that his complaint about the Gardner position was untimely.

The district court ruled that Bess had failed to comply with the notification provisions of the 1981 consent judgment. The consent judgment established an alternate complaint process for class members.[1] Section IX of the consent judgment provided that a class member proceeding under these alternative procedures first was required to "contact the plaintiff's monitoring committee." The PMC, in turn, was required to "notify the defendant's representative in writing" within 120 days of approval of the consent judgment for all claims of discrimination occurring from January 9, 1976 to the entry of judgment. For discrimination that occurred after the entry of judgment, the PMC was required to notify the Air Force within 60 days of the alleged violation of the consent judgment. If the PMC determined that the claim had merit and was unable to reach an agreement with the Air Force, the matter was submitted to the special master for formal adjudication.

1. A class member claiming discrimination by the Air Force could elect to follow the procedures set out in section IX of the consent judgment, rather than file a claim under the Civil Rights Act of 1964 or the Civil Service Reform Act of 1978. These alternate procedures offered a number of advantages over existing channels.

For example, the consent judgment created a Plaintiff's Monitoring Committee ("PMC") to litigate meritorious complaints without charge to the class members. A special master also was established to expedite resolution of these claims.

Bess was a civilian engineer at Eglin. After receiving notice of his rights under the consent judgment, Bess submitted a written complaint to the PMC on February 24, 1981, well within the 120 day time period. Bess stated on his complaint form that his grievance "ha[d] to do with promotion and QSI [quality step increase]." The PMC notified the defendant of Bess' complaint, and an Equal Employment Opportunity (EEO) counselor employed by the defendants conducted an investigation. In his interview with the EEO counselor on March 15, 1982, Bess alleged that racial discrimination caused him to be denied promotion to GS–14. Bess also stated that he had been induced to come to Eglin in 1977 by promises of early promotion, but was nevertheless passed over for a number of openings filled by less qualified white applicants. After conducting a number of interviews, the defendants' EEO counselor issued the report of his investigation on April 19, 1982. The PMC and Air Force continued to fail to reach an agreement, and Bess' claims were presented to the special master through a motion for hearing filed on October 3, 1983.

The district court determined that Bess and the PMC were required to file a separate complaint concerning the Gardner position. The district court pointed out that Bess' only complaint was filed with the PMC thirteen months before the Gardner position was filled and, thus, could not cover the Gardner vacancy. The district court reasoned that Bess must be strictly held to the provisions of the consent decree for which the parties bargained. The consent decree required as a prerequisite for litigation that the PMC be contacted and that the defendants be given written notification within 60 days. The district court found that Bess had never contacted the PMC specifically about the Gardner position and that the PMC had not given the Air Force written notification within 60 days of the allegedly discriminatory hiring of Gardner. The district court therefore concluded that Bess had acted "contrary to the plain and unambiguous provisions of the judgment." Accordingly, the court held that Bess' claim concerning the Gardner position was time barred.

Bess makes two general arguments in appealing the district court's determination. The first focuses on Bess' comments concerning the Gardner position to the EEO counselor investigating his complaint. Bess asserts that his statements about the position, along with the ensuing investigation and report, satisfied the notification requirement of section IX of the consent judgment. The district court, however, concluded that Bess had not complied with the plain meaning of the consent judgment because the PMC had never given the defendants *written* notification. As we discuss below, we do not find it necessary to reach this issue.

Bess' second argument rests upon the proposition that the Gardner position fell within the scope of his original complaint filed on February 24, 1981. Therefore, written notification specifically about the Gardner position was not required because the original complaint alleging discrimination in promotion had already given timely, written notification. The "plain and unambiguous" terms of the consent judgment do not address the scope of a complaint; the judgment is silent as to whether racial discrimination occurring after the filing of a complaint can be considered part of the original grievance. In the absence of any express provision, section II, paragraph 9 of the consent decree offers the only guidance in determining the proper scope of a complaint:

> In interpreting the provisions of this judgment, which may become disputed among the parties, the law as set forth by Title VII of the Civil Rights Act of 1964, as construed by the courts, shall apply.

Looking for guidance to Title VII, we find extensive case law concerning the scope of Title VII complaints. Courts have frequently confronted arguments that a judicial action is time barred because the allegations concern events beyond the scope of the complaint filed with the

EEOC. The standard that has evolved in this circuit defines the scope of an EEOC complaint as

"encompass[ing] any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the commission." In other words, the "scope" of the judicial complaint is limited to the "scope" of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970), *quoting King v. Georgia Power Co.*, 295 F.Supp. 943, 947 (N.D.Ga.1968) (citation omitted). *See also Gamble v. Birmingham Southern Railroad Co.*, 514 F.2d 678, 687 (5th Cir.1975). Under Section II, paragraph 9 of the consent judgment, this standard should be applied in determining the proper scope of Bess' complaint.

We hold that Bess' claim regarding the Gardner position fell within the scope of his original, more general complaint. Bess' complaint that he was not promoted to the Gardner position was "like or related to" his overall charge of discrimination in "promotion." The Gardner position was just one such instance where Bess was denied a promotion due to discrimination. There is no convincing evidence that Bess' allegations concerning the Gardner position were somehow different from or unconnected to Bess' complaint concerning promotions in general. The selection of Gardner also occurred during the "pendency of the investigation." The position was filled almost a month before the EEO counselor concluded his investigation and a year and a half before the special master heard evidence on Bess' complaint concerning promotions. In these circumstances, the investigation into the Gardner position could reasonably be expected to grow out of Bess' charge of discrimination in promotion.

In fact, the EEO counselor heard testimony and conducted an investigation about the filling of the Gardner position. The special master explicitly found that Bess "had raised the Gardner position during defendant's investigation" and that the EEO counselor had "questioned Lassiter [a personnel staffing specialist at Eglin] regarding this position." The EEOC counselor stated in his report that Lassiter was interviewed "to ascertain the reason(s) why the complainant did not appear on a recent [promotion] certificate." The report then details the complicated calculations which were said to justify Bess' not qualifying for this certificate. The Air Force also admits in its brief that its EEO counselor explained to the complainant why he had not appeared on a "recent promotions certificate." It is readily apparent that the recent opportunity for promotion to which the EEO counselor referred was the Gardner position which had been filled three days before the Lassiter interview.[2] It is thus wholly specious for the Air Force to argue that the charges concerning the Gardner position could not reasonably be expected to grow out of the "promotion" complaint when its own EEOC counselor clearly considered the filling of this position an integral part of Bess' original complaint.

Our ruling is consistent with established precedent in Title VII cases. It is well established that "the scope of the EEOC complaint should not be strictly interpreted." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir.1970), *quoting Baxter v. Savannah Sugar Refining Corp.*, 46 F.R.D. 56, 59 (S.D.Ga.1968). In *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. Unit A 1981), we dealt with an analogous set of facts. Gupta filed an EEOC grievance, alleging discrimination in employment conditions and pay. After Gupta filed his charges with the EEOC, he was discharged. Gupta claimed that his discharge was in retaliation for filing his EEOC complaint, but he never filed an additional EEOC complaint regarding the retaliation. Nevertheless, the district court

---

**2.** The calculations of Bess' numerical rating, for example, can be traced to those done for the Gardner position.

rejected the University's argument that Gupta's retaliation complaint was time barred. *Id.* at 414. We can see no reason why a similar conclusion should not be reached in this case. Such a result would follow the prevailing view in other jurisdictions. *See, e.g., Waiters v. Parsons,* 729 F.2d 233 (3d Cir.1984) (improper discharge occurring two years after complaint was within scope of original complaint); *Payne v. Travenol Laboratories, Inc.,* 673 F.2d 798, 814 n. 19 (5th Cir.), *reh'g denied,* 683 F.2d 417, *cert. denied,* 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982) (discriminatory acts occurring after filing of complaint are considered part of complaint); *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir.1973) (a complaint "may encompass ... new acts occurring during the pendency of the charge before the EEOC"); *Walters v. President and Fellows of Harvard College,* 616 F.Supp. 471, 475 (D.C.Mass 1985) (complaint may include new acts occurring during the pendency of the charge before the EEOC).

A broad interpretation of the scope of Bess' general complaint would be consistent with the policies underlying the consent judgment and Title VII. The general complaint fulfilled the purpose of the timely notification requirement by triggering the Air Force's investigatory and conciliatory procedures. *See Gamble v. Birmingham Southern Railroad Company,* 514 F.2d 678, 687 (5th Cir.1975); *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir.1984). Our ruling also implicates this court's interest in judicial economy which would be disserved by forcing an employee to file a new complaint every time he claims a new instance of discrimination. *Gamble v. Birmingham Southern Railroad Company,* 514 F.2d 678, 689 (5th Cir.1975); *Brown v. Puget Sound Electrical Apprenticeship & Training Trust,* 732 F.2d 726, 729–30 (9th Cir.1984), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985). Most importantly, this court has a strong interest in guaranteeing the equal employment opportunities mandated by Title VII. We thus adhere to the policy set out in *Sanchez v. Standard Brands Inc.:*

Mindful of the remedial and humanitarian underpinnings of Title VII and of the crucial role played by the private litigant in the statutory scheme, courts construing Title VII have been extremely reluctant to allow procedural technicalities to bar claims brought under the Act. Consequently, courts confronted with procedural ambiguities ... have, with virtual unanimity, resolved them in favor of the complaining party.

431 F.2d at 460–61.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.