Grace PERKINS, Plaintiff,

v.

SCHOOL BOARD OF PINELLAS COUNTY, Defendant.

No. 93–379–CIV–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

March 8, 1995.

---

B. Edwin Johnson, Clearwater, FL, for plaintiff.

Robert G. Walker, Jr., Law Office of Robert G. Walker, Jr., Clearwater, FL, for defendant.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's Motion for Summary Judgment and Supplemental Motion filed October 31, 1994 and October 17, 1994, respectively (Dkt. Nos. 61 and 36) and Plaintiff's Objection and Memorandum of Law in Opposition thereto filed December 2, 1994 and December 6, 1994, respectively (Dkt. Nos. 67 and 71).

Plaintiff brought this action on March 5, 1993 pursuant to 42 U.S.C. § 2000e, *et seq.* charging Defendant with discrimination based upon race. She has met the procedural requirements of 42 U.S.C. § 2000e–5 in that she timely filed a written charge of discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue. Plaintiff requested equitable relief, damages and attorneys fees, and trial by jury pursuant to 42 U.S.C. § 1981.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubts as to the existence of a genuine issue as to any material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir.1979) (quoting *Gross v. Southern Railway Co.,* 414 F.2d 292 (5th Cir.1969)). Factual disputes preclude summary judgment.

Defendant's Motion for Summary Judgment is brought pursuant to Rule 56(c) Fed. R.Civ.P., which provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A material fact is one which "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986) the Supreme Court of the United States held:

> In our view, the plain language of Rule 56(e) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. The Court also stated: "Rule 56(e) therefore requires that nonmoving party go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Id.* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

### STATEMENT OF FACTS

Plaintiff was employed by Defendant on August 18, 1985 as a classroom teacher. From September of 1990 to June of 1992 Plaintiff held the position of assistant principal. Plaintiff contemporaneously maintained a diary in which she made daily entries of events of significance to her. Within a few weeks after her appointment as the only black assistant principal at Tarpon Springs Middle School, Plaintiff stated that principal Larry Goodbread began a campaign of systematic efforts to discriminate against her based upon her race. He alleged that Plaintiff could not get along with certain members of the teaching staff, although he did not document the complaints.

During her tenure, some of the teachers did object to her insistence upon compliance with the school policies. There were several teachers meetings in which discussion of Plaintiff's management style was on the agenda. Plaintiff did not attend those meetings and was not required to do so. She preferred to meet with smaller groups. Former acting assistant principal, Vincent Boruta, filed a grievance against Plaintiff for what he believed to be unprofessional treatment. That grievance was dismissed as unfounded. Plaintiff received negative treatment on her evaluation as a result of that grievance, although Mr. Boruta did not receive the same negative treatment on his evaluation.

A reduction in force plan was put into effect during Plaintiff's second year as an assistant principal which affected "temporary assistant principals" regardless of race. Temporary assistant principals were those who had less than two years of service as an assistant principal. Of the eight temporary assistant principals who were affected by the reduction in force and returned to classroom teacher status, only Plaintiff has not been restored to assistant principal status.

On June 7, 1991, Mr. Goodbread evaluated Plaintiff's administrative ability as "less than acceptable" in several areas. Plaintiff appealed the performance evaluation, but on October 4, 1991, Bill Williamson, the Area One Superintendent, upheld the evaluation after review. On January 9, 1992, Dr. J. Howard Hinesley, the Superintendent of Schools reviewed the appeal and likewise upheld the evaluation.

On January 10, 1992, Plaintiff stated that Mr. Goodbread began a second campaign of discrimination in retaliation for the appeal she had filed with his supervisors. On January 31, 1992, Plaintiff objected to Mr. Goodbread having certain sanitary supplies delivered to her, which later became the subject of ridicule.

On February 20, 1992, as a result of Plaintiff's complaints, she met with Mr. Williamson, Shelby Harvey, the principal of Osceola Middle School, and Bette Ra Ivey, the Area Three Superintendent. Plaintiff was told she was being transferred to Osceola Middle School, but was not told that transfer was disciplinary. That decision was implemented by the School Board on March 11, 1992. Mrs. Ivey later told Plaintiff that the purpose of the February 20th conference had been to discuss unsatisfactory performance.

On June 9, 1992, Plaintiff requested that she be considered for the assistant principal position at Northeast High School. On June 10, 1992, the School Board rejected her request and appointed a person with less seniority. In this regard, Plaintiff stated that the School Board failed to abide by its written reduction in force guidelines.

Plaintiff stated that prior to June 9, 1992 the NEAT (Notify, Explain, Assist, Give Time) process was not followed because she had been assured that she was succeeding as assistant principal and that there were no complaints against her. Plaintiff stated that she was not informed that her future performance at Osceola Middle School would be the "final opportunity to demonstrate proficiency as an administrator" until after she was denied the opportunity to be appointed as assistant principal at Northeast High School.

Since June 10, 1992, two white assistant principal appointments have been made which allegedly deviated from procedures for appointment of white and black assistant principals during the reduction in force process. Plaintiff stated that if Defendant had followed its guidelines for such appointments, she would have been appointed to an assistant principal position.

Plaintiff again met with Shelby Harvey who evaluated her at "less than acceptable" in several areas, which evaluation was appealed by Plaintiff on June 26, 1992. On July 14, 1992, a meeting was held with Mrs. Ivey to review the evaluation. Plaintiff presented her written response to the ratings, but Mrs. Ivey stated that Plaintiff had demonstrated a "consistent pattern of disputing evaluations" and upheld the decision.

Plaintiff stated that white assistant principals and staff have been treated differently on evaluations and resulting disciplinary actions, which disparate treatment is a result of racial discrimination by Defendant.

Despite continued interest in appointment to an assistant principal position, Plaintiff has been denied that opportunity, although the other assistant principals affected by the reduction in force program were placed back in assistant principal positions.

On August 26, 1992 Plaintiff's name was removed from the eligibility list for appointment as assistant principal by the Superintendent. Plaintiff stated that the discriminatory action was taken based upon her race and in retaliation for her appeal of the evaluations.

### ANALYSIS

Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as to Plaintiff's claim of racial discrimination. Plaintiff is an employee of Defendant.

■ There are various types of Title VII claims; disparate treatment, retaliation, constructive discharge, and disparate impact. A charge of retaliation is one where an employee alleges retaliation for engaging in a protected activity. A disparate treatment charge is one where an employee alleges less favorable treatment because of race, sex, etc. In a disparate treatment case a plaintiff must prove discriminatory animus. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Plaintiff alleges claims of disparate treatment and retaliation. In both cases, Plaintiff carries the ultimate burden of persuading the trier of fact that Defendant intentionally discriminated against her.

■ A prima facie case of discrimination may be made by establishing the elements of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the test of *McDonnell Douglas*, Plaintiff must produce evidence of the four prongs of that test: 1) she was a member of a protected group; 2) an adverse employment

action took place; 3) she and a similarly situated non-protected person received dissimilar treatment; and 4) sufficient evidence, either circumstantial or direct, exists to infer a nexus or causal connection between race and the disparate treatment. *McDonald v. Sante Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), *Nix v. WLCY Radio*, 738 F.2d 1181 (11th Cir.1984). That test considers the variant for reduction-in-force cases based on circumstantial evidence of discrimination that the Eleventh Circuit has adopted. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

■ Plaintiff must prove her prima facie case by a preponderance of the evidence. The preponderance of evidence standard in Title VII cases means establishment of a "legally mandatory, rebuttable presumption." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If Plaintiff meets this threshold of establishing a prima facie case of discrimination by a preponderance of the evidence, the burden shifts to Defendant to come forward with a legitimate non-discriminatory business reason for the adverse action taken. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. Where Defendant carries this burden and shows such non-discriminatory reason, the burden once again shifts to Plaintiff.

■ The burden to avoid summary judgment is not to show by a preponderance of the evidence that the Defendant's articulated reasons were pretext. Rather, Plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that Plaintiff has established pretext, and in cases of retaliation, that the action taken was in retaliation for engaging in a protected activity. Issues of fact and sufficiency of evidence are properly reserved for the jury. The only issue to be considered by the judge at summary judgment is whether the Plaintiff's evidence has placed material facts at issue. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 921 (11th Cir.1993).

Further, and most importantly, "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston*, 9 F.3d at 919. "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.*

Accordingly, the grant of summary judgment, though appropriate when evidence of discriminatory intent is totally lacking, is generally unsuitable in Title VII cases in which Plaintiff has established a prima facie case because of the "elusive factual question" of intentional discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1094.

### DISCUSSION

Plaintiff has presented a prima facie case by meeting the four prongs of the *McDonnell Douglas* test:

1. Plaintiff is a member of a protected group; the African–American race (Dkt. No. 61, paragraph 5).

2. An adverse employment action took place (Dkt. No. 1, paragraphs 28–31). Plaintiff was removed from the eligibility list of candidates for assistant principal positions and was precluded from obtaining such a position at Northeast High School for which she applied and was qualified (Dkt. No. 61, paragraph 13, 14).

3. Plaintiff and similarly situated persons received dissimilar treatment. Plaintiff has presented evidence in her Affidavit (Exhibit 1, Volume I, Dkt. No. 69) that:

a) Katri Saari, a white assistant principal with more "less than acceptable" ratings, was not demoted. Over a year later, when Katri Saari was recommended not to receive her incremental increase, she did receive written notice. Plaintiff received no notice under the NEAT procedures when she was recommended not to receive her incremental increase. It also took longer for Katri Saari to be removed from eligibility for continued employment. Thus, Katri Saari was similarly situated as an assistant principal and was treated differently after a poor evaluation (paragraph 170).

b) Angelo Vicario, a white Assistant Principal, had inappropriate relations with another member of the staff. Despite serious professional concerns about his performance which had been documented by school officials, he was not demoted or recommended not to receive his incremental increase. To the contrary, he got a good evaluation on "staff/faculty relationships." He was similarly situated as an assistant principal, yet he received different treatment on his evaluation (paragraph 171).

4. Sufficient circumstantial evidence exists to infer a nexus between race and the disparate treatment. Plaintiff has presented evidence in her Affidavit (Exhibit 1, Volume I, Dkt. No. 69, paragraph 30) that Mr. Boruta, the former white acting assistant principal at Tarpon Springs Middle School, filed a grievance against Plaintiff. She stated that Larry Goodbread told her that he viewed both actions negatively, even though Mr. Boruta's complaint had no basis. Nevertheless, Mr. Boruta did not receive any negative treatment on his evaluation as a result of that action. Plaintiff, against whom the charges were unfounded, did receive negative treatment on her evaluation. Mr. Boruta was similarly situated as a former assistant principal and was a staff member at that time, yet he received different treatment on his evaluation.

Additionally, Brenda Dorsett, a black employee of Defendant, presented evidence in her Affidavit dated November 23, 1994 (Exhibit 7, Volume IV, Dkt. No. 69) of disparate treatment experienced by her and other qualified black teachers and administrative candidates. This was apparently in direct contravention of the School Board's proclaimed goals of having at least one black administrator at every secondary school in the Pinellas County School System (Dorsett Affidavit, paragraph 39). Specifically, Ms. Dorsett testified in her deposition dated October 10, 1994, (Exhibit 8, Volume V, Dkt. No. 69, page 75, line 13 to page 79, line 13) that she believed she was a victim of racial discrimination because a lesser qualified person was placed in a position to move up, when her superiors knew that person was not qualified. Ms. Dorsett had the qualifications to move up and was not given the opportunity. The fact that ultimately she did not pass the Targeted Assessment does not preclude the fact that she was similarly situated as a black employee of Defendant, and her testimony tends to circumstantially support Plaintiff's case that she was treated differently based upon her race. Ms. Dorsett also stated that she and two other black teachers have experienced retaliation in that they have received different treatment from principal John Leannes since Ms. Dorsett testified in this case (Exhibit 7, Volume IV, Dkt. No. 69, paragraph 42).

The Court must reiterate that in order to defeat a Motion for Summary Judgment, Plaintiff must designate specific facts showing a genuine issue for trial exists. Whether Plaintiff was treated differently on her evaluations because of her race, i.e., whether the evaluations were fair in the first place, whether they were acted upon differently, and whether Defendant's actions were in retaliation for appealing, are genuine issues of material fact.

Plaintiff has based her allegations on more than her perception of other employees and the situation and has set forth facts which may tend to show that she was treated in a racially discriminatory fashion when all justifiable inferences are drawn in her favor. Plaintiff has met her burden of presenting a prima facie case by a preponderance of the evidence which established a rebuttable presumption shifting the burden to Defendant to come forward with a legitimate non-discriminatory reason for the adverse employment action. Defendant has met its burden by presenting evidence of Plaintiff's history of poor evaluations.

The burden then shifted back to Plaintiff. She has met her burden of persuasion that Defendant's articulated reason for her treatment was mere pretext. Plaintiff has come forward with evidence to rebut the presumption of legitimacy in the Defendant's reason that she was not appointed to assistant principal position at Northeast High School because of poor evaluations. The poor evaluations kept her from the eligibility pool of candidates for promotion, but through cir-

cumstantial evidence in the form of affidavits and depositions, and reviewing the record and all its inferences in the light most favorable to the nonmoving party, the fact that the evaluations themselves are alleged to be discriminatory tends to show the proffer explanation unworthy of credence.

The Eleventh Circuit has stated that "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules.... Title VII is not a shield against harsh treatment at the workplace." *Nix v. WLCY Radio,* 738 F.2d 1181, 1187 (11th Cir.1984).

■ Title VII does not award damages against employers who cannot prove nondiscriminatory reasons for adverse employment action, but only against employers who are proven to have taken adverse employment action by reason of race or some other prohibited criterion; that employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that Plaintiff's proffered reason of race is correct. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Although Defendant's argument is persuasive, reasonable minds could differ and questions of fact remain. Plaintiff has presented probative evidence which has placed material facts at issue sufficient to withstand a Motion for Summary Judgment. Questions of fact and sufficiency of evidence are properly reserved for the jury. Accordingly, it is

**ORDERED** that Defendant's Motions for Summary Judgment (Dkts. 36, 61) are **denied.**

**DONE and ORDERED.**