Tamalyn A. TIPS, Plaintiff,

v.

The **REGENTS OF TEXAS TECH UNIVERSITY, Greg Mumma, Bill Locke, Stephanie Harter, James Clopton, Charles Mahone, Gary Fireman, Stephen Richards, Donald Haragan, Thomas Langford, and Robert Lawless,** Defendants.

Civil A. No. 5:94–CV–193–C.

United States District Court,
N.D. Texas,
Lubbock Division.

Jan. 18, 1996.

**1516**

Don C. Dennis, Boerner & Dennis, Lubbock, TX, and Chris D. Prentice, Law Office of Chris D. Prentice, Hale Center, TX, for plaintiff.

Dedra Lynn Wilburn and Robert B. O'Keefe, General Litigation Division, Attorney General of Texas, Austin, TX, for defendants.

## ORDER

CUMMINGS, District Judge.

After hearing the testimony and reviewing the exhibits admitted into evidence, the Court makes the following findings of fact:

1. Plaintiff, Tamalyn A. Tips, was a graduate student at Texas Tech University.

2. Plaintiff graduated with a Bachelor Degree in Psychology from Auburn University.

3. Although the Plaintiff was treated by the University as being a student with a mathematical learning disability on October 8, 1990, that disability was accommodated in her statistics course.

4. On the other hand, as regards the Plaintiff's alleged inability to conceptually organize material, that suggestion was made for the first time after the Plaintiff failed to pass all four parts of her comprehensive exams. Furthermore, the inability to conceptually organize material on a doctoral comprehensive exam does not fall with the definition of a "disability" within the meaning of the ADA or the Rehabilitation Act of 1973 because that alleged "disability" is not a physical or mental disability that substantially limits one or more major life functions.

5. In December of 1992, the Plaintiff was awarded a Masters of Arts degree in Clinical Psychology.

6. The Clinical Psychology Program requirements include written qualifying exams.

7. On March 29 and 30, 1993, the Plaintiff took the qualifying exams for the first time, and did not request an accommodation. Plaintiff failed three out of four sections on this test.

8. In the fall 1993 semester, the Plaintiff retook the three sections of the qualifying exams and again did not ask for any accommodation. By letter dated November 23, 1993, Plaintiff was notified that she had passed two of the three sections taken. Plaintiff was notified that she was being dismissed from the program.

9. After the November 23 notification letter, the Plaintiff began the process of appealing her dismissal and applied to the Graduate School for reinstatement. Her first appeal was returned to her because it did not state an acceptable ground for consideration.

10. The Plaintiff's second appeal was rejected by letter dated April 21, 1994. In that letter, Plaintiff was informed that the Clinical Psychology Program faculty was the first level of appeal for her and that the faculty had denied her appeal for reinstatement.

11. A letter dated April 22, 1994, informed the Plaintiff that the Graduate School of the Clinical Psychology Program also denied her appeal to be reinstated.

12. On May 10, 1994, Dr. Langford wrote a letter stating that the Student Affairs Committee in the Graduate School had upheld the decision of the Clinical Psychology Program faculty and that Plaintiff's appeal was denied.

13. Subsequently, the Plaintiff's attorney wrote a letter to Dr. Haragan requesting a reversal of the previous decisions of the Clinical Psychology Program faculty and the Graduate School.

14. The University agreed to consider the Plaintiff's accommodations requests one final time. And, on June 22, 1994, the Plaintiff made the following requests in the alternative:

a) Allow Plaintiff another opportunity to pass the qualifying exams; or

b) Allow Plaintiff to take the assessment section (the only remaining section to be passed) in some alternative form of test; or

c) Allow Plaintiff to take additional course work in the area of assessment as a substitute for the assessment section of the qualifying exams.

15. On June 29, 1994, the University wrote a letter denying the Plaintiff's requested accommodations.

Based upon the above findings, the Court makes the following conclusions of law:

1. This Court has jurisdiction over Plaintiff's claims under 29 U.S.C. § 794, *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and 42 U.S.C. § 12131, *et seq.*, the Americans with Disabilities Act ("ADA").

2. It is generally recognized that in passing the ADA, Congress was extending the non-discrimination principles contained in Section 504 to public and private employers not covered as well as embracing services and programs provided by states and municipalities. *Galloway v. Superior Court*, 816 F.Supp. 12, 20 (D.D.C.1993). For this reason courts called on to interpret and apply the provisions of the ADA have found past interpretations of Section 504 to be both instructive and authoritative for issues arising under the ADA. See, e.g., *Easley by Easley v. Snider*, 36 F.3d 297 (3d Cir.1994).

3. One of the intended purposes of Section 504 is to secure for disabled individuals "even handed" treatment and the equal opportunity to participate in and benefit from covered programs. *Alexander v. Choate*, 469 U.S. 287, 304, 105 S.Ct. 712, 721–22, 83 L.Ed.2d 661 (1985). It is for this reason that both Section 504 and the ADA require that reasonable accommodation be made. See *Mayberry v. Von Valtier*, 843 F.Supp. 1160 (E.D.Mich.1994) (ADA); *Bradley v. University of Texas M.D. Anderson Cancer Center*, 3 F.3d 922 (5th Cir.1993) (504). However, it is not always easy to discern when the failure to make an accommodation for a disabled individual crosses the line from rightful refusal to illegal conduct. *Southeastern Community College v. Davis*, 442 U.S. 397, 412, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979). Nevertheless, fundamental modifications in program requirements, the provision of services of a personal nature, or the provisions of aids as services which will result in undue financial hardship or lowering program standards are not required. *Id.* at 407–12, 99 S.Ct. at 2367–70.

4. In order to establish a *prima facie* case of discrimination under Section 504 and/or the ADA, Plaintiff must show that: (1) she is a "qualified individual with a disability" as that term is defined in Section 504 and under the ADA, and (2) she was denied the benefit of or excluded from participation in a covered program under circumstances which infer that such exclusion was based solely on the basis of her disability. *Pushkin v. Regents of the University of Colorado*, 658 F.2d 1372, 1384–85 (10th Cir.1981).

5. Once the Plaintiff has established her *prima facie* case, the burden then shifts to Defendant to produce evidence to show that Plaintiff is not a "qualified individual with a disability" within the meaning of Section 504 and the ADA; or that Plaintiff was not denied the benefits of or excluded from participation in the program solely because of her disability. *Pushkin*, 658 F.2d at 1385.

6. In determining whether Plaintiff is a "qualified individual with a disability," this Court must first determine whether

**1518**

Plaintiff's alleged learning disability is the type of disability intended to be covered by the statutes. See 45 C.F.R. pt. 84 App. A p. 310 (1985). Plaintiff must then show that she meets all of the eligibility requirements for participation in the program, with or without accommodation. With regard to post-secondary educational services, the eligibility requirements include both academic and technical requirements, with technical requirements embracing all "nonacademic admissions criteria that are essential to participation in the program in question." 45 C.F.R. pt. 84 App. A p. 405. These nonacademic admissions criteria include any necessary qualifications which are essential to effective participation in the program. *Southeastern Community College v. Davis*, 442 U.S. 397, 406–07, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979).

7. The ADA defines the term "discriminate" to include "not making reasonable accommodations to the *known* ... limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). [Emphasis added] The legislative history emphasizes that the duty to accommodate is triggered by a request from an employee. H.R.Rep. No. 485, 101st Cong., 2d Sess. pt. 2, at 65 (1990); S.Rep. No. 116, 101st Cong., 1st Sess., at 34 (1989). EEOC Regulations implementing the equal employment provisions of the ADA provide that, in general, "[i]t is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. § 1630.9 App. (1992). See also EEOC Technical Assistance Manual on the Employment Provisions (Title I) of the ADA § 3.6 (January 1992). Indeed, the legislative history goes on to state that: "In the absence of a request, it would be inappropriate to provide an accommodation...." H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 65 (1990); S.Rep. No. 116, 101st Cong., 1st Sess., at 34 (1989).

8. Accordingly, Plaintiff has failed to establish a *prima facie* case of intentional discrimination as is required by both Section 504 and the ADA, and her claim must fail. *Bradley v. University of Texas M.D.* *Anderson Cancer Center*, 3 F.3d 922 (5th Cir.1993).

Judgment shall be entered for Defendants, in accordance with the above findings of fact and conclusions of law. Plaintiff shall bear all costs of court.

IT IS SO ORDERED.