

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 28, 1998

Ms. Delores L. Alspaugh
Interim Executive Director
Texas Cosmetology Commission
5717 Balcones Drive
P.O. Box 26700
Austin, Texas 78755-0700

Opinion No. DM-499

Re: Whether an applicant for a new or renewed cosmetologist's license must submit a health certificate signifying that the applicant is free of hepatitis (RQ-998)

Dear Ms. Alspaugh:

Section 31(a) of the Cosmetology Regulatory Act[1] (the "act") requires an individual applicant for a new or renewed cosmetologist's license ("applicant") to submit a health certificate verifying that the applicant is free from "tuberculosis, hepatitis, or a contagious disease for which the applicant is not entitled to protection under the Americans with Disabilities Act[2]" ("ADA"). Presumably, an applicant who fails to produce a health certificate or who produces a health certificate that indicates the applicant has tuberculosis, hepatitis, or a contagious disease may not be licensed and may not, consequently, practice cosmetology. You ask only about the requirement that an applicant be certified free of hepatitis. You first ask "exactly what types of hepatitis need to be tested for and what kinds of tests are necessary in determining if an individual has hepatitis." Because your agency is authorized to construe an ambiguous statute by rule, we will not presume to tell you exactly what rules you should enact. We believe, however, that the commission may enact a rule that reasonably interprets the statute and that is consistent with the legislative intent. Second, we understand you to ask what protections the ADA affords individuals with hepatitis in the context of state licensing, suggesting by your question that section 31 of the act may be inconsistent with the dictates of federal law. We conclude that, under the ADA, the commission may not refuse to license an applicant with hepatitis if the applicant is an otherwise qualified individual with disability.

We begin by discussing the act. The act generally prohibits an unlicensed individual from performing or attempting to practice cosmetology[3] and imposes criminal penalties for the

---

[1]V.T.C.S. art. 8451a.

[2]42 U.S.C. ch. 126 (footnote added).

[3]*See* V.T.C.S. art. 8451a, § 9(a).

unauthorized practice of cosmetology.[4] An individual who desires to practice cosmetology may obtain from the Cosmetology Commission an operator, manicurist, instructor, specialty, or facialist specialty license,[5] and the license must be renewed biennially.[6] With every application for a new or renewed application, the applicant must submit a health certificate stating that the applicant does not have hepatitis, as well as tuberculosis or a contagious disease, and the statute criminalizes a physician's[7] certification if the physician has not examined the applicant:

> (a) Every applicant for an original or renewal operator license, instructor license, reciprocal license, or speciality certificate must submit a certificate of health signed by a licensed physician or licensed physician assistant, showing that the applicant is free, as determined by the examination, from tuberculosis, hepatitis, or a contagious disease for which the applicant is not entitled to protection under the Americans with Disabilities Act . . . .

> (b) Any physician or physician assistant who signs a health certificate required by Subsection (a) of this section showing the applicant to be free from a disease covered by that subsection without having made the physical examination is guilty of a misdemeanor, and on conviction may be fined not less than $50 or more than $200.[8]

---

[4]*See id.* § 40(a). An unlicensed person who violates the act, except for section 31 of the act, commits a misdemeanor and may be fined $100 to $300. *See id.*

[5]*See id.* §§ 10 (operator license), 11 (manicurist license), 12 (instructor), 13 (specialty), 13A (facialist specialty). A licensee may perform only those practices that are within the scope of his or her license. *See id.* §§ 10(a), 11(a), 12, 13(a), 13A(a); *see also id.* § 26.

[6]*See id.* § 33(a).

[7]We use the term "physician" in this opinion to include a physician assistant as well as a physician. *See* V.T.C.S. art. 8451a, § 31.

[8]V.T.C.S. art. 8451a, § 31 (emphasis and footnotes added); *see also id.* § 33. We do not find in the act a criminal penalty for a physician who certifies an applicant to be free of a contagious disease knowing from his or her examination of the applicant that the applicant is, in fact, not free of disease. *See id.* § 31(b).

In addition to prohibiting the commission from licensing an applicant who has a contagious disease, the act forbids a licensee who knows that he or she is suffering from an infectious or contagious disease to practice cosmetology, *see* V.T.C.S. art. 8451a, § 32(a), and forbids an employer to hire a licensee to perform cosmetology services knowing that the licensee is suffering from an infectious or contagious disease, *see id.* § 32(b). You do not ask, and we do not therefore consider, whether these prohibitions are valid given the 1990 enactment of the ADA. *But see* 42 U.S.C. § 12112 (prohibiting certain employers from discriminating against qualified individuals with disability because of disability); 28 C.F.R. § 35.130 (same). Likewise, we do not consider the validity of 22 T.A.C. § 83.22(c), which, to the extent permitted by federal law, provides that no cosmetology student or licensee shall be required "knowingly to work upon a person infected with an infectious disease . . . ." *Cf.* 42 U.S.C. § 12182(a) (prohibiting generally discrimination against individual on basis of disability in "full and equal enjoyment of . . . services" by any operator of public accommodation); 28 C.F.R. § 36.301(a) (same).

A licensee who violates section 31, which we have just quoted, commits a misdemeanor and may be fined $100 to $300; the licensee also may be subject to an administrative penalty.[9]

In 1997, the Seventy-fifth Legislature amended section 31 to explicitly require an applicant to be certified free of hepatitis,[10] as well as to limit the term "contagious disease" by excluding disabilities covered by the ADA.[11] The legislature also amended various sections of the act to permit the Cosmetology Commission to increase the fees it is authorized to collect so that the commission could afford to hire more inspectors. In general, the 1997 amendments were in response to television news reports in Houston, Dallas, San Antonio, El Paso, Beaumont, and Austin detailing, we assume, unsanitary conditions in certain cosmetologists' shops.[12] The legislature apparently was motivated, at least in part, by a desire to protect the public from the spread of contagious diseases.

We turn to the questions you raise. Preliminarily, we recognize that the State of Texas, to protect the public health, reasonably may regulate a person's right to pursue a lawful occupation.[13] We assume for purposes of this opinion that prohibiting an individual with hepatitis from practicing cosmetology is reasonable, despite prophylactic measures that an infected individual may take to minimize, if not eliminate, the chance of spreading the disease.[14]

---

[9]*See* V.T.C.S. art. 8451a, §§ 35A, 40(b). We find in the act no criminal penalty for an applicant for an original license who violates section 31, *see id.* § 40(a), although presumably the applicant would be unable to obtain a license. *Compare id.* art. 8407a, § 21(b) (listing as ground for refusing barber's license applicant's failure to present health certificate showing applicant is free "from . . . infectious or contagious diseases") *with id.* art. 8451a, §§ 10(d), 11(d), 12(d), 13(d), 13A(d), 15(b), 36 (declaring applicant entitled to license without listing health-certificate requirement; not listing health-certificate requirement as grounds for denial, suspension, or revocation of license).

[10]The act does not define the term "contagious disease." As a medical term of art, "contagious" means "communicable; . . . ; transmissible by contact with the sick or their fresh secretions or excretions." STEDMAN'S MEDICAL DICTIONARY 315 (5th unabr. lawyers' ed. 1982). Various courts have interpreted the term consistently with the medical definition, *see, e.g., Davis v. Rodman*, 227 S.W. 612, 613 (Ark. 1921); *Pierce v. Dillingham*, 67 N.E. 846, 849 (Ill. 1903); *Stryker v. Crane*, 50 N.W. 1132, 1133 (Neb. 1892).

[11]*See* Act of May 10, 1997, 75th Leg., R.S., ch. 267, § 18, 1997 Tex. Gen. Laws 1226, 1229. In our opinion, the clause "for which the applicant is not entitled to protection under the [ADA]" in section 31 does not modify the terms "tuberculosis" and "hepatitis." Rather, we construe the "for which" clause in section 31(a) to modify only the term "contagious disease."

[12]*See* House Comm. on Public Health, Bill Analysis, C.S.S.B. 1131, 75th Leg., R.S. (1997).

[13]*See Driggs v. Denison*, 420 S.W.2d 446, 448 (Tex. Civ. App.--Dallas 1967, no writ); 10 TEX. JUR. 3D *Business and Occupation Licenses* § 5 (1997).

[14]The Centers for Disease Control states that individuals may be vaccinated against viral hepatitis A and B (and incidentally D). Fact sheets from the Centers for Disease Control also suggest that spread of viral hepatitis may be prevented by requiring cosmetologists to wear gloves (to prevent the transmission of the bloodborne strains) and by requiring a cosmetologist to wash his or her hands after going to the bathroom, particularly if the cosmetologist is, by chance, serving food. *See* Centers for Disease Control & Prevention, Hepatitis Branch, *Hepatitis A* (visited (continued...)

You first ask what kinds of hepatitis a physician must test for to comply with section 31 and what kinds of tests section 31 requires a physician to run. We note, initially, that, as a medical term of art, "hepatitis" refers generally to an inflammation of the liver, which inflammation may be caused by a virus or by toxic agents.[15] You appear to interpret the term to refer to viral hepatitis only, and we agree that your construction is consistent with the apparent legislative desire to reduce the spread of contagious diseases. But even with this common-sense restriction on the term's breadth, the term "viral hepatitis" refers to numerous, immunologically unrelated strains of the disease.[16] Your first question appears motivated by this complexity.

The term "viral hepatitis" denotes at least six strains of disease. Hepatitis A, B, and C are, we understand, the most common strains found in this country.[17] Hepatitis A is transmitted generally when a susceptible person ingests the virus, shed in the feces of an infected person.[18] This may happen when, for example, an infected person fails to wash his or her hands after going to the bathroom and then touches food a susceptible person eats. Hepatitis A also may be transmitted by contaminated food or water.[19] Hepatitis B is transmitted by blood, through sexual contact, and from a mother to her newborn child.[20] Hepatitis B may be transmitted, for example, when an infected person injures him- or herself with a sharp instrument and bleeds on a susceptible person's open

---

[14](...continued)
Oct. 28, 1997) <http://www.cdc.gov/ncidod/diseases/hepatitis/hepafact.htm>; *id., Hepatitis B* (modified Aug. 7, 1996) <http://www.cdc.gov/ncidod/diseases/hepatitis/hepbfact.htm>; *id., Hepatitis C* (last modified Mar. 6, 1997) <http://www.cdc.gov/ncidod/diseases/hepatitis/hepcfact.htm>; *id., Hepatitis G* (visited Oct. 28, 1997) <http://www.cdc.gov/ncidod/diseases/hepatitis/hepgfact.htm>.

[15]*See* STEDMAN'S MEDICAL DICTIONARY 639 (5th unabr. lawyers' ed. 1982).

[16]*See id.* at 640. Viral hepatitis differs from tuberculosis, the other disease expressly listed in section 31, in two respects that are significant to your question. First, tuberculosis is a specific disease, caused by bacteria called *Mycobacterium tuberculosis. See* Division of Tuberculosis Elimination, United States Dep't of Health & Human Servs., *Questions and Answers about TB* (last modified Nov. 5. 1996) <http://www.cdc.gov/nchstp/tb/faq.htm>; STEDMAN'S MEDICAL DICTIONARY 1498 (5th unabr. lawyers' ed. 1982). Second, only one test is used to ascertain whether a patient has tuberculosis, and we understand this test is relatively easy to obtain and inexpensive. *See* Division of Tuberculosis Elimination, United States Dep't of Health & Human Servs., *Questions and Answers about TB* (last modified Nov. 5, 1996) <http://www.cdc.gov/nchstp/tb/faq.htm>.

[17]Letter from Jean Brender, R.N., Ph.D., Epidemiologist, Infectious Disease Epidemiology and Surveillance Div., Texas Dep't of Health, to Delores L. Alspaugh, Interim Executive Director, Texas Cosmetology Comm'n (Sept. 4, 1997) [hereinafter Letter].

[18]*See* Centers for Disease Control & Prevention, Hepatitis Branch, *Epidemiology & Prevention of Viral Hepatitis A to E: An Overview* (visited Oct. 28, 1997) <http://www.cdc.gov/ncidod/diseases/hepatitis/slideset>.

[19]*See id.*

[20]*See id.*

sore.[21] Hepatitis C and D are transmitted just as hepatitis B is: by blood, through sexual contact, or perinatally.[22] Hepatitis D infects only individuals already infected with hepatitis B.[23] Hepatitis E is transmitted primarily through the fecal-oral route, just as hepatitis A.[24] No outbreaks of hepatitis E have yet occurred in this country.[25] Hepatitis G is transmitted through blood, and therefore, like hepatitis B, C, and D, can be passed when an injury with a sharp instrument occurs.[26]

Not all strains of hepatitis may be tested for outside of a research laboratory; the tests may, therefore, be difficult to obtain and expensive. Active infections of viral hepatitis are associated with elevated liver function tests, and we understand there is one test, the alanine aminotransferase test ("ALT"), that can be used to determine generally whether a patient has some kind of hepatitis; the ALT is, as we understand it, relatively easy to obtain and relatively inexpensive.[27] As we understand it, if the ALT is within normal limits, it is highly unlikely that the patient has viral hepatitis.[28] If, on the other hand, the test is elevated, then further tests may be run to isolate the particular strain of hepatitis present.[29] No readily available laboratories test for the hepatitis E virus.[30] Finally, testing for hepatitis G is available only in research laboratories.[31]

---

[21]*See id.*

[22]*See id.*

[23]*See* Letter, *supra* note 17.

[24]*See* Centers for Disease Control & Prevention, Hepatitis Branch, *Epidemiology & Prevention of Viral Hepatitis A to E: An Overview* (visited Oct. 28, 1997) <http//www.cdc.gov/ncidod/diseases/hepatitis/slideset>.

[25]*See id.*

[26]*See* Centers for Disease Control & Prevention, Hepatitis Branch, *Hepatitis G* (visited Oct. 28, 1997) <http://www.cdc.gov/ncidod/diseases/hepatitis/hepgfact.htm>.

[27]*See* Letter, *supra* note 17.

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

Your agency is statutorily authorized to adopt rules consistent with the act[32] and to enforce the act.[33] Moreover, a court will seriously consider an agency rule construing an ambiguous statute if the agency is charged with executing the statute, the agency interpretation is reasonable, and the agency interpretation does not contradict the statute's plain language.[34] This is particularly true where the statute's ambiguity is due to the complexity of the subject matter.[35] And a court will accept a reasonable agency interpretation of an ambiguous statute even if other reasonable interpretations exist.[36]

We conclude, therefore, that the commission may determine by rule what strains of viral hepatitis a physician must test for under section 31. This office will not presume to instruct the commission what the rule should say. The commission's construction of section 31 must, of course, be reasonable, and it must be consistent with the language of the statute. The commission should be guided in its rulemaking by the legislature's apparent desire to reduce the spread of contagious diseases from cosmetologists to their clients. But we believe this intent permits the commission to arrive at multiple "reasonable interpretations" of this statute. The commission may find it reasonable, for example, to require a physician to include in his or her examination of the applicant the ALT, i.e., the general test that will indicate whether hepatitis of some type is present, and if the test shows that the applicant is infected, the commission may find it reasonable to consider further testing to determine the particular virus. Or, the commission may find it reasonable to require applicants to be tested only for those strains of viral hepatitis that cosmetologists are most likely to transmit in the normal course of business. These two possible interpretations that the commission may find reasonable are examples only; other reasonable interpretations may exist.[37]

We continue to your second question, inquiring what protections the ADA affords individuals with hepatitis in the state licensing context. Clearly, the ADA forbids a licensing agency, such as yours, to deny or revoke a license to a qualified individual with a disability on the basis of the disability. Whether a particular individual with hepatitis is a qualified individual with a

---

[32]See V.T.C.S. art. 8451a, § 4(a). The commission is also authorized to adopt "sanitation rules" to prevent the spread of infectious or contagious diseases. See id. § 4(e).

[33]See id. §§ 35A (providing for administrative penalties), 36 (providing grounds for denying, suspending, or revoking license), 38(a) (authorizing commission to sue to enjoin violation of act), 41 (authorizing commission to receive and investigate complaints).

[34]See Simplex Elec. Corp. v. Holcomb, 949 S.W.2d 446, 447 (Tex. App.--Austin 1997, writ requested); Texas Ass'n of Long Distance Tel. Cos. v. Public Util. Comm'n, 798 S.W.2d 875, 884 (Tex. App.--Austin 1990, writ denied).

[35]See Texas Ass'n of Long Distance Tel. Cos., 798 S.W.2d at 884.

[36]See Quorum Sales, Inc. v. Sharp, 910 S.W.2d 59, 64 (Tex. App.--Austin 1995, writ denied).

[37]We note that section 31 premises a physician's certification upon a "physical examination." It is not clear to us whether this phrase is a medical term of art that suggests certain procedures to a physician. If it is, we do not believe section 31 can be read to require an applicant to submit to more than such an examination.

disability is, however, a question that requires for its resolution the consideration of numerous fact issues. It is not, consequently, amenable to the opinion process.[38] While we cannot decide the issue for you, we can provide you with some guidance.

Under the ADA, a public entity, such as the State or a state licensing agency, may not discriminate[39] against any "qualified individual with a disability . . . by reason of" the disability.[40] With respect to your questions, a public entity may not establish (or, we believe, enforce) licensing requirements that discriminate on the basis of disability against qualified individuals with disabilities.[41] It is for the commission to consider in the first instance whether a proposed action against an applicant suffering from viral hepatitis because of the hepatitis will contravene the ADA. First, the commission must determine whether an applicant infected with viral hepatitis indeed is disabled. To conclude that a particular applicant has a disability, the commission must find one of three things:

1.     The applicant has a physical or mental impairment that substantially limits at least one major life activity;[42]

2.     The applicant has a record of a physical or mental impairment that substantially limits at least one major life activity; or

3.     The applicant is regarded as having a physical or mental impairment that substantially limits at least one major life activity.[43]

Viral hepatitis may constitute a physical or mental impairment if, in the particular circumstance, it substantially limits at least one major life activity. The phrase "physical or mental impairment" includes contagious diseases.[44] In addition, although the administrative rules do not

---

[38]*See, e.g.*, Attorney General Opinions DM-98 (1992) at 3, H-56 (1973) at 3, M-187 (1968) at 3, O-2911 (1940) at 2.

[39]Discrimination is the unnecessary imposition of extra burdens on an individual. *See Medical Soc'y of New Jersey v. Jacobs*, 1993 WL 413016 *7 (D.N.J.).

[40]*See* 42 U.S.C. § 12132.

[41]*See* 28 C.F.R. § 35.130(b)(6); *see also Clark v. Virginia Bd. of Bar Examiners*, 880 F. Supp. 430, 442 (E.D. Va. 1995); *Stillwell v. Kansas City Bd. of Police Comm'rs*, 872 F. Supp. 682, 684 (W.D. Mo. 1995); *Ellen S. v. Florida Bd. of Bar Examiners*, 859 F. Supp. 1489, 1493 (S.D. Fla. 1994).

[42]The phrase "major life activities" means, for purposes of the ADA, those that the average person in society can perform with little or no difficulty, *see Duff v. Lobdell-Emery Mfg. Co.*, 926 F. Supp. 799, 806 n.2 (N.D. Ind. 1996), "such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 35.104.

[43]28 C.F.R. § 35.104.

[44]*See id.* Although you do not ask about the requirement that a physician verify that an applicant is free of
(continued...)

explicitly list viral hepatitis as a contagious disease that constitutes a physical or mental impairment for purposes of the ADA, we do not believe the exclusion equates to a finding that viral hepatitis may never be a physical or mental impairment. Commenting on its list of contagious diseases, the United States Attorney General explained that the list cannot be exclusive "because of the difficulty of ensuring the comprehensiveness of such a list, particularly in light of the fact that other conditions or disorders may be identified in the future."[45] Courts have recognized that certain individuals infected with hepatitis may bring a claim for discrimination under the ADA.[46] Courts also have found that individuals with hepatitis may bring a claim under the federal Rehabilitation Act,[47] which forbids a program receiving federal financial assistance to discriminate against an otherwise qualified individual with handicaps.[48] Judicial interpretations of the Rehabilitation Act are considered persuasive in interpreting the ADA.[49]

In our view, the fact that an individual suffers from chronic, as opposed to acute, viral hepatitis is not the deciding factor in determining whether the individual is physically or mentally impaired. Chronic viral hepatitis persists for more than six months.[50] We note that not all of the cases we have just mentioned appeared to distinguish between acute and chronic viral hepatitis. Furthermore, we do not find in the statute or applicable regulations language limiting a disability to

---

[44](...continued)
tuberculosis—and that an applicant who cannot provide that certification may not be licensed as a cosmetologist—we note that tuberculosis is specifically listed as a disease that constitutes a physical or mental impairment for purposes of the ADA. *See id.* If tuberculosis can be found to "substantially limit[] one or more of the major life activities" of a qualified individual with the disease, we believe it constitutes a disability under the ADA. *See* 42 U.S.C. § 12102(2)(A) (defining "disability"); 28 C.F.R. § 35.104 (same). In the alternative, if a qualified individual who has suffered from tuberculosis can show that, because of the disease, he or she has "a record of . . . [a physical] . . . impairment" or is "regarded as having [a physical] impairment," the individual may be disabled under the ADA. *See* 42 U.S.C. § 12102(2)(B), (C) (defining "disability"); 28 C.F.R. § 35.104 (same). *See generally School Bd. of Nassau County v. Arline*, 480 U.S. 273, 289 (1986) (concluding that individual suffering from tuberculosis can be handicapped within meaning of Rehabilitation Act).

[45]EQUAL EMPLOYMENT OPPORTUNITY COMM'N & UNITED STATES DEP'T OF JUSTICE, AMERICANS WITH DISABILITIES HANDBOOK II-18 (1991) [hereinafter HANDBOOK].

[46]*See Harrison v. State of Delaware Dep't of Servs. for Children, Youth, & their Families*, 1996 WL 790101 *1 (D. Del.) (hepatitis C); *McNeel v. Public Serv. Co.*, 923 F. Supp. 1316, 1319 (D. Colo. 1996) (hepatitis C), *aff'd*, 117 F.3d 1428 (10th Cir. 1997).

[47]29 U.S.C. ch. 16.

[48]*See Roe v. District of Columbia*, 4 Nat'l Disability L. Rep. ¶ 345 (D.D.C. 1993); *Lussier v. Dugger*, 1 Nat'l Disability L. Rep. (LRP Pubs.) ¶ 8 (11th Cir. 1990) (chronic active hepatitis); *New York State Ass'n for Retarded Children v. Carey*, 612 F.2d 644, 647, 649 (2d Cir. 1979) (hepatitis B carriers).

[49]*See Tips v. Regents of Tex. Tech Univ.*, 921 F. Supp. 1515, 1517 (N.D. Tex. 1996); *Stillwell*, 872 F. Supp. at 686.

[50]STEDMAN'S MEDICAL DICTIONARY 639 (5th unabr. lawyers' ed. 1982).

a permanent impairment.[51] In its analysis of the rules implementing the ADA, the United States Attorney General contends that the temporal nature of a particular affliction is only one factor that a fact-finder may consider in determining whether the afflicted individual is disabled for purposes of the ADA:

> [I]mpairments are not necessarily excluded from the definition of "disability" simply because they are temporary, but . . . the duration, or expected duration, of an impairment is one factor that may properly be considered in determining whether the impairment substantially limits a major life activity. . . .
>
> The question of whether a temporary impairment is a disability must be resolved on a case-by-case basis, taking into consideration both the duration (or expected duration) of the impairment and the extent to which it actually limits a major life activity of the affected individual.[52]

Some courts, on the other hand, have indicated that, in general, only a permanent or continuing impairment is a disability for purposes of the ADA.[53]

If the commission determines that a particular applicant suffering from viral hepatitis is disabled, the commission must determine whether the applicant is otherwise qualified to be licensed as a cosmetologist. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . , meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."[54] This issue further devolves into two components: (1) whether the statutory requirement that an applicant be certified free of hepatitis is an essential eligibility requirement; and if it is, (2) whether rules, policies, or practices reasonably may be modified to permit the applicant's licensure.[55]

---

[51]*See also* HANDBOOK, *supra* note 45, at II-20.

[52]*Id.* at II-20 through II-21. The United States Court of Appeals for the Fifth Circuit, however, has indicated that a temporary ailment is not an impairment for purposes of the ADA.

[53]*Cf. Evans v. City of Dallas*, 861 F.2d 846, 852-53 (5th Cir. 1988) (concluding that transitory knee injury is not impairment under Rehabilitation Act); *de la Torres v. Bolger*, 781 F.2d 1134, 1137 (5th Cir. 1986) (stating that impairment under Rehabilitation Act does not include "'transitory illnesses which have no permanent effect on the person's health'") (quoting *Stevens v. Stubbs*, 576 F. Supp. 1409, 1414 (N.D. Ga. 1983)); *cf. also Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1994) (stating that intermittent, episodic impairment is not disability for purposes of ADA) (citing, among other sources, *Evans*, 861 F.2d at 852-53).

[54]42 U.S.C. § 12131(2).

[55]*Cf. Arline*, 480 U.S. at 287 n.17. The entire "otherwise qualified" inquiry turns on questions of fact. *See*
(continued...)

Determining whether freedom from viral hepatitis is an essential eligibility requirement is a fact question belonging, in the first instance, to the commission.[56] Being certifiably free of viral hepatitis is an essential eligibility requirement if that quality is necessary to provide cosmetology services.[57] An applicant poses a direct threat to the public health or safety if no reasonable modifications to the commission's policies, practices, or procedures will eliminate the health risk.[58] Nevertheless, the commission's determination that an individual poses a direct threat to the public health or safety because of his or her disability must be based on an individualized assessment:

> The determination that a person poses a direct threat to the health or safety of others may not be based on generalizations or stereotypes about the effects of a particular disability. It must be based on an individualized assessment,[59] based on reasonable judgment that relies on current medical evidence or on the best available objective evidence, to determine: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modification of policies, practices, procedures will mitigate the risk.[60]

---

[55](...continued)
*Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1034 (6th Cir. 1995).

[56]*See Sandison*, 64 F.3d at 1034. The commission's determination is subject to judicial scrutiny. *See Jacobs*, 1993 WL 413016 *6. We find little judicial guidance as to how to determine which eligibility requirements are essential and which are not. *See, e.g., Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 929 (8th Cir. 1994) (finding that High School Activities Association proved that age limit in interscholastic sports is essential eligibility requirement); *Clark*, 880 F. Supp. at 442 (finding no evidence that Board of Bar Examiners treats applicant's mental or emotional health disorders as essential eligibility requirement); *Coleman v. Zatechka*, 824 F. Supp. 1360, 1368 (D. Neb. 1993) (finding essential eligibility requirements for participating in roommate assignment). Moreover, in its commentary on the ADA regulations, the attorney general declined to clarify the concept. *See* HANDBOOK, *supra* note 45, at II-26. Instead, the attorney general stated that, given "the variety of situations in which an individual's qualifications will be at issue," including more specific criteria would be impossible. *See id.* The question is particularly complex, the attorney general noted, where the public safety is involved. *See id.* at II-27.

[57]*See* 28 C.F.R. § 35.130(b)(8); *Tips*, 921 F. Supp. at 1518; *Clark*, 880 F. Supp. at 442 (quoting 28 C.F.R. § 35.130(b)(8)).

[58]*See Arline*, 480 U.S. at 287-88 n.16; *Clark*, 330 F. Supp. at 441; HANDBOOK, *supra* note 45, at II-27.

[59]*See also Stillwell*, 872 F. Supp. at 686 (stating that individualized inquiry is essential if ADA is to protect disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear) (citing *Arline*, 480 U.S. at 287).

[60]*Id.* (footnote added); *Arline*, 480 U.S. at 287-88.

We emphasize, in this regard, the necessity of the individualized assessment. A federal court has termed blanket exclusions on individuals suffering from a particular kind of impairment "highly suspect."[61]

If the commission concludes that freedom from viral hepatitis is an essential eligibility requirement for cosmetologists, then, as we stated above, it must finally consider whether an individual suffering from the disease reasonably may be accommodated. An accommodation is not reasonable if it either unduly burdens the commission, financially or administratively, or requires the commission to fundamentally alter the nature of the practice of cosmetology.[62]

---

[61]See *Stillwell*, 872 F. Supp. at 686-87 (and cases cited therein).

[62]See *Arline*, 480 U.S. at 287 n.17; *cf. also* 45 C.F.R. § 84.12(c).

## S U M M A R Y

The Texas Cosmetology Commission may, by rule, reasonably interpret the requirement in V.T.C.S. art. 8451a, section 31(a) that an applicant for a new or renewed cosmetologist's license be certified free of hepatitis.

Whether, under the Americans with Disabilities Act, 42 U.S.C. ch. 126, the Cosmetology Commission may refuse to license an applicant who has viral hepatitis on the basis of the applicant's disease is a question that the commission must determine on a case-by-case basis. The commission must consider whether the viral hepatitis constitutes or is perceived to constitute, in that case, a physical or mental impairment that substantially limits at least one of the applicant's major life activities; whether freedom from viral hepatitis is an essential eligibility requirement to be licensed as a cosmetologist; and, if it is, whether the commission reasonably may accommodate the applicant.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General