**Annie J. BRAY, Plaintiff,**

v.

**NATIONAL SERVICES INDUSTRIES, INC., Defendants.**

**No. 5:99–CV–361–4(DF)**

United States District Court, M.D. Georgia, Macon Division.

Oct. 18, 2001.

Bradley G. Pyles, Macon, GA, for plaintiff.

Forrest Walker Hunter, Alston & Bird, Atlanta, GA, for defendants.

## ORDER

FITZPATRICK, District Judge.

Before the Court are Defendant's and Plaintiff's motions for summary judgment (Tab # 's 24 and 31). Plaintiff has brought

this action alleging that Defendant discriminated against her in violation of the Americans with Disabilities Act ("ADA"). Defendant contends that (1) Plaintiff has not exhausted the administrative remedies required for actions under the ADA, and (2) Plaintiff does not have a disability as defined by the ADA.

## I. FACTUAL BACKGROUND

In 1974 Plaintiff began working at Defendant's facilities in Cochran, Georgia. Plaintiff started out as an assembly worker and was subsequently promoted to special equipment operator. Prior to the injury at issue in this case, Plaintiff suffered two shoulder injuries and had been placed on light-duty work while recovering. She also underwent surgery on her rotator cuff on July 17, 1998.

On July 27, 1998, Plaintiff filed a statement notifying Defendant that she had injured both of her shoulders while at work. Plaintiff was treated by a physician who allowed her to return to work under the temporary restriction that she keep her arms at her sides at all times while working. At that time, Defendant had a policy of providing light-duty positions for employees who suffered from work-related injuries; however, it provided no such positions for workers with injuries that were not work-related. Not sure of the circumstances under which the July 27 shoulder injury occurred, Defendant placed Plaintiff on modified work duty until it made a determination as to whether the injury was work-related. On September 1, 1998, Plaintiff suffered a separate non-work-related injury to her knee and took medical leave until September 11, 1998. Because this leave involved a non-work-related injury, Defendant required Plaintiff's physician to complete documents in accordance with Defendant's Family and Medical Leave Act ("FMLA") policy, which covered leave for such injuries.

Plaintiff returned to work on September 11, 1998. At that time, she no longer complained of any knee problems, but she was still required to work with her arms at her sides because of the continuing pain in her shoulders. On that same day, Defendant determined that Plaintiff's July 27 shoulder injury was not job-related. Cliff Goff, Defendant's human resources manager, informed Plaintiff about Defendant's policy of providing light-duty work only for job-related injuries. Because Plaintiff's injuries were determined not to be work-related, he informed her that Defendant would provide no more light-duty positions and that she could not return to work until her doctor allowed her to use both of her arms fully. Defendant also provided Plaintiff with a second set of FMLA documentation necessary to substantiate her extended absence beginning on that day.

On December 21, 1998, while still on leave because of her shoulder injury, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming that Defendant's refusal to allow her to work because of her restricted arm use was discriminatory in violation of the ADA. Plaintiff remained on leave until mid-February 1999, when she returned to her position as special equipment operator. By that time she had obtained a doctor's release from the limited arm-use restrictions and was allowed to work full-duty. Plaintiff continued to work on full duty until March 2, 1999, when she again requested medical leave because of pain in her shoulders and neck. Plaintiff provided documentation from a doctor indicating she should remain on leave until March 30, 1999.

Between September 11, 1998, and mid-February 1999, Goff sent Plaintiff several letters requesting FMLA documentation to be signed by her physician. These doc-

uments were necessary to substantiate her absence between September 11 and February 10. Beginning in February 1999, these letters included a warning to Plaintiff informing her that failure to provide such documentation would result in disciplinary action or even termination. Having not received the FMLA documentation as of April 22, 1999, Goff notified Plaintiff of the decision to terminate her, effective as of April 15, 1999.

Sometime after Plaintiff's April 15 termination, Defendant determined that her shoulder injury of July 27, 1998, had in fact been work-related. Based on this determination, Defendant decided to pay Plaintiff workers' compensation benefits for her time on leave. Defendant also decided to reinstate Plaintiff because the new determination eliminated any need for the FMLA documentation. She was reinstated with full benefits and seniority rights retroactive to the date of her termination. Despite the reinstatement, however, Plaintiff never returned to work. On March 15, 2000, Defendant terminated Plaintiff for a second time. This decision was made under the terms of its collective bargaining agreement, which required termination of employees who remained on leave of absence for over one year.

Plaintiff now claims that Defendant discriminated against her in violation of the ADA by refusing to allow her to work as a special equipment operator while she was subject to a restriction on the use of her arms. She also contends that Defendant regarded her as having a disability when it refused to provide her a light-duty position.

## II. DISCUSSION

### A. *Standard of Review on a Motion for Summary Judgment*

Summary judgment must be granted if "there is no genuine issue as to any material fact and ... the moving party is enti-

tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. *See id.* at 254–55, 106 S.Ct. 2505; *Maynard v. Williams,* 72 F.3d 848, 851 (11th Cir.1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (internal quotation marks omitted). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(e); *see also Celotex Corp.,* 477 U.S. at 324–26, 106 S.Ct. 2548. This evidence must consist of more than mere conclusory allegations or legal conclusions. *See Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991). Under this scheme, summary judgment must be entered "against a par-

ty who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

### B. ADA Claims

#### 1. Exhaustion of Administrative Remedies Under the ADA

Defendants first allege that Plaintiff has failed to exhaust the administrative remedies required by the ADA. A plaintiff cannot bring a civil action for a violation of the ADA unless she has first filed a timely charge with the EEOC. *See* 42 U.S.C.A. § 2000e–5(e)(1) (West 1994).[1] While Defendant does not now challenge the timeliness of Plaintiff's initial EEOC charge, it contends that this suit is nonetheless barred because it involves allegations of conduct that occurred after that filing and because the EEOC charge was not amended to reflect those allegations. More specifically, Defendant claims that Plaintiff had returned to work since the filing and that the circumstances which she claims resulted in termination are separate and discrete occurrences not encompassed by the allegations made in the EEOC charge.

 In similar contexts under Title VII, the courts have determined the scope of an EEOC filing by looking at whether the conduct complained of in the charge was likely to place the defendant on notice that the subsequent action would also be challenged and whether the subsequent conduct was related to the overall charge. *See Turner v. Orr,* 804 F.2d 1223, 1226 (11th Cir.1986); *Buffington v. General*

Time Corp., 677 F.Supp. 1186, 1192 (M.D.Ga.1988). These subsequent claims "may encompass any kind of discrimination like or related to the allegations contained in the [EEOC] charge and growing out of such allegation during the pendency of the case before the Commission." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970) (quoting *King v. Georgia Power Co.,* 295 F.Supp. 943, 947 (N.D.Ga.1968)).[2] This notice requirement is generally satisfied when the conduct in the complaint "could have been a reasonably expected outgrowth of the EEOC's investigation of the charged conduct." *Wu v. Thomas,* 863 F.2d 1543, 1547 (11th Cir. 1989); *see also Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993) (looking at whether the claimed acts of discrimination were committed in the same manner as those described in the EEOC charge). The key, therefore, is whether the conduct in question that was raised after the filing is discrete and independent of that complained of in the EEOC charge. *See Mills v. Amoco Performance Prods., Inc.,* 872 F.Supp. 975, 985 (S.D.Ga.1994).

In making this determination, the Tenth Circuit has allowed plaintiffs some leeway concerning the treatment of post-charge conduct, recognizing that when the claim seeks "relief for incidents not listed in [the plaintiff's] original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Brown v. Hartshorne*

---

**1.** The ADA incorporates the same enforcement procedures as set out for Title VII actions. *See* 42 U.S.C.A. § 12117(a) (West 1995); *Armstrong v. Lockheed Martin Beryllium Corp.,* 990 F.Supp. 1395, 1400 (M.D.Fla. 1997); *Schmitt v. Beverly Health & Rehab. Servs.,* 962 F.Supp. 1379, 1383 (D.Kan.1997).

**2.** The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th cir.1981) (en banc).

*Pub.Sch.Dist. No. 1,* 864 F.2d 680, 682 (10th Cir.1988). Subsequent decisions, emphasizing the distinction between the types of errors that could occur, have noted that non-reported violations occurring after the filing are treated more leniently than those that occur prior to the filing. *See Witherspoon v. Roadway Express, Inc.,* 782 F.Supp. 567, 572 (D.Kan.1992).

■■■ Here, the post-charge allegation appears to be the inevitable result of the complained of conduct. In her EEOC charge, Plaintiff originally claimed that she was not allowed to work at her regular job with the arms-use restrictions. Even after her return from leave in February 1999 she still apparently suffered from these problems. There is a genuine issue of material fact as to whether Defendant initially terminated her because of her injury or because she had failed to return the proper paperwork. Should a fact finder determine that the action was taken because of her injury, such action would stem from the same circumstances that gave rise to the initial EEOC filing. The same impairments that resulted in her mandatory leave and subsequent EEOC charge between September 1998 and February 1999 apparently still existed in March 1999 when Plaintiff again went on leave. Additionally, the same policy that required her to take leave in September 1998 also mandated her termination in April 1999. These circumstances, when viewed in the light most favorable to Plaintiff, appear to involve like and related issues, and the subsequent discharge appears to have grown from this common ground.

Despite the fact that this claim is covered by the scope of the EEOC filing, however, Plaintiff cannot survive Defendant's motion for summary judgment because she has failed to establish a prima facie case of discrimination under the ADA.

## 2. Substantive Analysis of Plaintiff's ADA Claims

■■■ Under the ADA, a covered employer cannot discriminate against a "qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a) (West 1995). This statute protects not only individuals with actual disabilities, but also those who are wrongfully perceived as having disabilities. *See School Bd. of Nassau County v. Arline,* 480 U.S. 273, 278–79, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). Such protections were "intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that have the effect of disadvantaging persons with, or regarded as having, disabilities". *Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907, 913 (11th Cir.1996); *see also Arline,* 480 U.S. at 279, 107 S.Ct. 1123.

Because Plaintiff relies only on circumstantial evidence in making out her claim for discrimination, the Court turns to the familiar *McDonnell Douglas* burden-shifting analysis to determine the merits of her claims on a motion for summary judgment. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Durley v. APAC, Inc.,* 236 F.3d 651, 658 (11th Cir.2000). Under this framework, Plaintiff first bears the burden of establishing a prima facie case. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If a plaintiff successfully establishes a prima facie case of discrimination, then the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for its conduct. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). At this point, howev-

er, the defendant bears only a burden of production, not persuasion. *See id.* Should the defendant produce any evidence "which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the adverse action," then it has satisfied its burden of production. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis omitted). If the defendant meets this burden, then the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that this proffered explanation is merely pretext and the defendant's real purpose was discriminatory. *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

■ For a plaintiff to establish a prima facie case under the ADA, it is necessary to prove the following three elements by a preponderance of the evidence: (1) that the plaintiff has a disability; (2) that she is a qualified individual (i.e., one who is able to perform the essential functions of the job with or without reasonable accommodation); and (3) that the defendant discriminated against her because of the disability. *See Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir.1998); *Pritchard v. Southern Co. Servs.*, 92 F.3d.1130, 1132 (11th Cir.1996). An individual is considered to have a disability for purposes of the ADA if she (1) has a physical or mental impairment that substantially limits a major life activity; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2) (West 1995). Rather than argue that she suffered from an actual disability at any time, Plaintiff contends that Defendant's policy of differentiating between work-related and non-work-related injuries for purposes of providing light-duty positions necessarily regarded her as disabled.

■ To be "regarded as" having a disability under the ADA, a plaintiff must demonstrate that she (1) has a physical or mental impairment that does not substantially limit a major life activity, but is treated by her employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits a major life activity only as a result of the attitudes of others toward such an impairment; or (3) has no illness or malady defined by the EEOC as a physical or mental impairment, but nonetheless is treated by her employer as having a substantially limiting impairment. *See* 29 C.F.R. § 1630.2(*l*) (2001); *Gordon*, 100 F.3d at 912–13. The Supreme Court has further limited the scope of "regarded as" claims to circumstances involving "(1) a covered entity [that] mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity [that] mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). It is not enough that the employer simply act because of some apparent impairment. Rather, the employer must "entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.; see also McCollough v. Atlanta Beverage Co.*, 929 F.Supp. 1489, 1498 (N.D.Ga. 1996). Therefore, to regard an impairment as a disability, a defendant must wrongfully perceive the plaintiff's non-disabling characteristic to be an impairment that substantially limits a major life activity. To complete such an analysis, however, it is necessary first to determine whether an impairment, either actual or perceived, would constitute a disability under the ADA.

■ Courts have allowed employers wide discretion and freedom in determining how to treat workers with impairments that do not rise to the level of a covered disability. The Supreme Court has recognized that under the ADA an employer is allowed "to prefer some physical attributes over others" and that it is also "free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." *Sutton,* 527 U.S. at 490–91, 119 S.Ct. 2139. It is well-recognized that temporary injuries or impairments are not generally recognized as constituting substantially limiting conditions for purposes of showing a disability. EEOC regulations clearly indicate that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. app. §§ 1630.2(j) (2001). This view has been echoed by several circuits. For example, the Fifth Circuit found that a worker with ankle problems, bone spurs, and ligament damage creating a thirteen percent reduction in body use after surgery did not suffer from a disability under the ADA. *See Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 759 (5th Cir. 1996). Similarly, the Eighth Circuit found that the *inability* to work while recovering from surgery was not enough to support the claim of a disability because such injuries were temporary. *See Heintzelman v. Runyon,* 120 F.3d 143, 145 (8th Cir.1997).

■ Like the injuries examined by the Fifth and Eighth Circuits, Plaintiff suffered from impairments to her shoulder that required her to undergo surgery and caused her to be temporarily restricted in the scope of her arm use. Plaintiff has stipulated that these restrictions were not permanent. She has failed, however, to provide any evidence that Defendant misperceived the status of her injuries such that she was viewed as having a covered disability. Quite the contrary, Plaintiff personally informed Defendant that she would have to work under certain restrictions. "Where a 'defendant's recognition of plaintiff's limitations was not an erroneous perception, but instead was a recognition of a fact,'" it would be inappropriate to find that such a plaintiff has been regarded as disabled under the ADA. *Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1230 (11th Cir.1999) (quoting *McCollough,* 929 F.Supp. at 1498). Plaintiff points to no evidence to show that Defendant acted on any information or perceptions other than those limitations that she, herself, brought to Defendant's attention. Additionally, after it was brought to Defendant's attention that her restrictions had been lifted, she was allowed to return to her previous position as a special equipment operator. Without evidence that Defendant considered her injuries to be anything more than temporary, Plaintiff has provided no adequate basis for claiming that she was regarded as having a disability. *See Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1328 (11th Cir. 1998) (noting that lack of evidence that the defendant considered the plaintiff's injury to be anything but temporary cut against being regarded as disabled). Even had Plaintiff provided evidence that Defendant wrongfully perceived her injury as a permanent impairment, however, such a perception would not categorize her as suffering from an impairment that substantially limits the major life activity of work.

■ An impairment constitutes a disability only "if it substantially limits a major life activity." *Reed v. Heil,* 206 F.3d 1055, 1061 (11th Cir.2000). The Eleventh Circuit has recently affirmed its willingness to consider work as a major life activity. *See Mullins v. Crowell,* 228 F.3d 1305, 1313 (11th Cir.2000) (noting that while several circuits have chosen not to treat work as a major life activity under the ADA, the Supreme Court's decision in

*Sutton* did not foreclose courts from doing so). However, an impairment must do more than merely restrict the performance of one particular job to substantially limit the activity of work; rather, the impairment must be one (or be perceived as one) that "significantly restricts 'the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Standard*, 161 F.3d at 1327 (quoting 29 C.F.R. § 1630.2(j)(3)(i)); *see also Sutton*, 527 U.S. at 473, 119 S.Ct. 2139. The employer must regard the person as having an impairment "that is viewed ... as generally foreclosing the type of employment involved, not just a narrow range of job tasks." *Gordon*, 100 F.3d at 913.

The Eleventh Circuit recently clarified its treatment of work as a major life activity in *Witter*. See 138 F.3d at 1369–70. There, the plaintiff, a pilot who suffered from mental conditions that affected his ability to fly, claimed that the defendant had violated the ADA when it grounded him. *See id.* at 1368–69. Admitting he had no actual disability, the plaintiff claimed that the defendant had regarded him as having a disability and had substantially limited his ability to work. *See id.* Rejecting this argument, the Eleventh Circuit determined that for the plaintiff to succeed, he would have had to have shown that the defendant "perceived him as unable to perform the relevant 'class of jobs,'" which would require him "to prove [the defendant] regarded him as unable to perform not just the job of being a pilot, but also the non-piloting jobs" that were available through the defendant. *Id.* at 1370. As in *Witter*, Plaintiff merely claims that her injuries, whether perceived as temporary or permanent, have prevented her only from continuing as a special assembly operator. She has made no claims that these injuries would bar her from other positions at the facilities. On the

contrary, she was able to carry out other similar light-duty assignments prior to her September 1999 leave. With no evidence or even allegations that she has been barred from a broad range of jobs and positions, the Court finds that she has failed to carry her burden at this stage in the litigation.

 Finally, Plaintiff cannot save her claim by arguing that Defendant's policy of providing light-duty jobs only for work-related injuries automatically regarded her as being disabled. An employer is not required to perform a detailed ADA analysis for every employee's injury to determine whether that employee should stay on the job. This would create an overly burdensome duty on every employer. Rather, it is the burden of the employee to show first that she was (or was regarded as being) disabled. *See id.* at 1369. Without such a showing, there is no prima facie case. Here, Plaintiff seeks to reverse the rule, arguing that because Defendant's policy did not first consider whether she was disabled, the policy was a facial violation of the ADA. Such an analysis, however, would allow a plaintiff to convert any employment action into an ADA claim, regardless of whether she could make out a prima facie case.

 While Plaintiff correctly notes that some blanket exclusionary policies are problematic under the ADA, all polices that make general exclusions are not per se discriminatory. Generally, policies that differentiate in their treatment of employees based on the type or severity of the impairment are problematic. Cases cited by Plaintiff recognize this proposition. In *Stillwell v. Kansas City Bd. of Police Comm'rs*, 872 F.Supp. 682, 685 (W.D.Mo. 1995), the court held that a policy preventing one-handed persons taking positions as security officers violated the ADA. In *Bombrys v. City of Toledo*, 849 F.Supp. 1210, 1221 (N.D.Ohio 1993), the court

found a policy that prevented diabetic individuals from serving as police officers also violated the ADA. The circumstances of those cases, however, differ greatly from those now before the Court; in each of those cases the court first determined that the decisions were made because of the disability involved and were based on "impermissible stereotype[s]." *Stillwell*, 872 F.Supp. at 685.[3] *Stillwell*, for example, involved policies directed at individuals with only one hand, a characteristic which the court considered a covered impairment because of the anatomical loss. Additionally, in *Bombrys*, the defendant restricted individuals with one specific type of impairment; it presumed that individuals with diabetes would be unable to perform their duties. Each of those cases, therefore, involved an injury-specific policy for employment decisions.

In contrast to those cases cited by Plaintiff, Defendant's policy for determining whether to provide light-duty assignments did not distinguish between the types of injuries—whether they were serious or minor, permanent or temporary. In fact, the policy in question took into consideration only whether the injury was work-related. While Plaintiff argues that such failure to consider the type of injury involved violated the ADA, the Court finds that this tunnel vision is the very factor that saves the policy. It was not used to prevent individuals with certain types of impairments from working; rather, it was used only to compensate individuals who had injured themselves on the job—regardless of the type of injury. Nor does an employer have any duty to create light-duty work positions unless such a position

is sought as a reasonable accommodation. *See Motts v. Synthetic Indus.*, CIV.A. 4:94–CV–248RLV, 1995 WL 584734, at *4 (N.D.Ga. Aug.9, 1995) (noting that the ADA did not require an employer to create a light-duty position for an employee who suffered from a back injury). Here, Plaintiff was not discriminated against because of her injuries. Rather, she was placed on leave because of an actual, temporary restriction brought to Defendant's attention by Plaintiff, herself. Therefore, Defendant treated Plaintiff in the same manner as any employee with a temporary, non-work-related impairment.

## III. CONCLUSION

Because Plaintiff has failed to establish a prima facie case under the ADA, Defendant's motion for summary judgment is hereby **GRANTED**. Additionally, because she has not met this threshold requirement, Plaintiff's motion for summary judgment is hereby **DENIED**.

---

**3.** Plaintiff also cites *EEOC v. The Chrysler Corp.*, 917 F.Supp. 1164, 1173 (E.D.Mich. 1996) in which the district court found the defendant's policy of not hiring individuals with a certain blood sugar level to violate the ADA. The Sixth Circuit reversed, however, noting that the plaintiff failed to show first that he was disabled or regarded as disabled. *See EEOC v. Chrysler Corp.*, No. 97–1793, 1998 WL 879589 at *1–2 (6th Cir. Nov.25, 1998).